```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION AT MEMPHIS
```

| | |
|---|---|
| PETER J. GLEASON, ) | |
| URI GELLER, and ) | |
| LISBETH SILVANDERSSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 06-2443-JPM/tmp |
| ) | |
| MICHAEL W. FREEMAN and ) | |
| CINDY L. HAZEN ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment (Doc. 21), filed March 27, 2008. Plaintiffs filed their Response in Opposition (Doc. 36) on May 5, 2008. Plaintiffs filed their Motion for Partial Summary Judgment (Doc. 24) on March 28, 2008. Defendants filed their Response in Opposition (Doc. 28) on April 17, 2008. The Court held a hearing in these matters on May 29, 2008. For the reasons discussed below, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

**I. Background**

This case arises from the failed negotiations for the sale of the former home of Elvis Presley following its

auction online at eBay.com ("eBay").  On April 14, 2006, Defendants Michael Freeman and Cindy Hazen listed an auction for their historic home, formerly owned by Elvis Presley, at 1034 Audubon Drive, Memphis, Tennessee ("Defendants' house"), on eBay.  (Compl. (Doc. 1) ¶ 14.) Defendants hired Stephen Shutts to act as their agent for the auction.  (Shutts Dep. 25-27.)  Plaintiffs Peter Gleason, Uri Geller, and Lisbeth Silvandersson formed a partnership to participate in the auction using Gleason's eBay account to pre-qualify and bid on Defendants' house. (Shutts Dep. 31-32; Gleason Dep. 20-21.)

Before participating in the real estate auction, Plaintiffs consented to eBay's terms and conditions of use, which stated in part that "eBay Real Estate auction-style advertisements of real property do not involve legally binding offers to buy and sell.  Instead, eBay Real Estate's auctions are simply a way for sellers to advertise their real estate and meet potential buyers."  (Pls.' Mot. Partial Summ. J. (Doc. 24), Ex. 3 ("eBay terms"), at 2.) Shutts added the following statement to Defendants' auction page: "[p]lease note that bidding on eBay is a legally binding contract in which the winner commits to following through on the purchase."  (Id. Ex. 5 ("Electronic Auction Record"), at 5.)  When Defendants asked Shutts about this

language, he told them that it was used to deter frivolous bidders. (Freeman Dep. 18.) Defendants never asked Shutts to remove this language from the auction posting. (Shutts Dep. 31, 48.)

While bidding on the auction progressed, a potential buyer, Mike Curb, offered to stop the auction and immediately buy the house. (Hazen Dep. 34.) Defendants informed Curb they would only stop the auction if he was willing to pay $1,300,000.00, which he declined to do. (Id. at 35.) Defendants and Shutts expressed a desire during the auction to sell the house to Mike Curb. (Shutts Dep. Ex. 10.)

During the auction and before Plaintiffs' final bid, Shutts informed Gleason that Hazen planned to keep possession of the house for sixty days after closing. (Hazen Dep. 51-53.) On May 14, 2006, bidding ended, and Plaintiffs received an automated email from eBay notifying them that their bid of $905,100.00 was the winning one. (Electronic Auction Record, at 11.) Immediately after the auction closing, Defendants received and rejected a $1,000,000.00 offer for the house from Mike Reno, another interested potential buyer. (Freeman Dep. 68.)

On May 16, 2006, Kathleen Webb, Defendants' real estate attorney, sent the parties a "proposed sales

contract" that she had used on previous real estate auctions. (Shutts Dep. Ex. 5.) The "proposed sales contract" had a blank space for the parties to insert the deposit amount and a clause giving Plaintiffs possession immediately after the closing. (Id.) The parties negotiated a deposit amount of $5,000.00 from each of the three buyers, and Kathleen Webb sent a new "proposed sales contract" on May 21, 2006, with those amounts and the sixty day possession term included. (Shutts Dep. Ex. 7.) On May 24, 2006, Gleason returned the signed contract with the time of possession provision crossed out, along with a check in the amount of $5,000.00 to be held in escrow as a deposit on the house. (Gleason Dep. 75, 85-88.) Kathleen Webb then sent out an email to all the parties informing them that Gleason would like to talk to the sellers about the sixty day provision. (Hazen Aff. Ex. 3.) The parties had no further contact. (Gleason Dep. 92-94.)

On May 27, 2006, Mike Curb renewed his offer to buy the house for $1,000,000.00. (Hazen Dep. 47.) Mike Curb and Defendants signed a contract for the sale of the house on May 30, 2006. (Id. at 46.) Plaintiffs filed this action on July 17, 2006, claiming breach of contract, fraud, and negligent misrepresentation.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc.,799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAm. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998.  However, "'[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'" Street v. J.C. Bradford & Co., Inc., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**III. Analysis**

**A. Breach of Contract**

In Tennessee, a plaintiff must prove three elements to succeed in an action for a breach of contract: (1) the existence of a contract, (2) breach of the contract, and (3) damages which are a result of the breach. (Life Ctrs. of Am., Inc. v. Charles Town Assoc. L.P., 79 F.3d 496, 514 (6th Cir. 1996).

The expression of the parties' intent to be bound and the definitiveness of the terms of the agreement determine the existence of a binding contract. Higgins v. Oil, Chem.

& Atomic Workers Int'l. Union, Local No. 30677, 811 S.W.2d 875, 881 (Tenn. 1991). The parties' intent is presumed from the words of the contract, interpreted according to their usual and customary usage. Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885 (Tenn. 2002); Guiliano v. Cleo, Inc., 995 S.W.2d 88 (Tenn. 1999). Courts determine the intent behind the words of the contract by examining the meaning that a reasonable person would have derived in the same situation. Moore v. Moore, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1986). However, when the words of the contract leave the intent of the parties in doubt, courts must take into account "the situation, acts, and the conduct of the parties, and the attendant circumstances." APCO Amusement Co. v. Wilkins Family Rests. Of Am., Inc., 673 S.W.2d 523, 527 (Tenn. Ct. App. 1984)(quoting 17 Am. Jur. 2d Contracts § 25 (1964)).

Plaintiffs contend that the close of the auction created a binding contract. Plaintiffs assert that the "legally binding contract" language that Defendants added to the auction overrode the contradictory language found in eBay's terms and conditions, which allowed parties to add terms to their auctions but described eBay real estate auctions as "non-binding." Defendants argue that the "legally binding contract" language only obligated the

highest bidder to negotiate an eventual sales contract in good faith.

The eBay terms and conditions are silent as to whether or not a term of the agreement may be overridden by contradictory language in an auction posting.  However, the terms and conditions state, four times, that eBay real estate auctions are only "auction-style advertisements." (eBay terms.)  Therefore, eBay's terms and conditions are unambiguous in their intent not to make the auction a binding sales agreement.

Even if the eBay terms and conditions were ambiguous and allowed sellers to create a binding contract for sale, there is no evidence of a manifestation of an intent to form a binding contract by the parties in this case.  When the words used create a doubt as to the parties intention to be bound, the Court looks to "the situation, acts, and the conduct of the parties, and the attendant circumstances."  APCO Amusement Co., 673 S.W.2d at 527.  The record shows that Defendants added additional terms to scare off potentially fraudulent bidders, not to create a binding contract.  (Freeman Dep. 17.)  Plaintiffs demonstrated that they too did not intend to be bound to the sale by their high bid when they continued to negotiate the terms of the sale.  First, Plaintiffs negotiated a

$15,000.00 deposit amount, which was well below the customary 10%, after the end of the auction. (Shutts Dep., Ex. 9.) After receiving a final sales contract containing both those terms negotiated during and following the online bidding, Plaintiffs rejected the sixty-day possession provision to which they had previously agreed. (Id.) This continued negotiation manifests Plaintiffs' intent not to be bound to a sales contract for the house simply by bidding on it.

The evidence in the record leaves no genuine issue as to any material fact that the parties did not intend to create a binding contract for the sale of Defendants' house through their participation in the eBay auction. Therefore, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment and GRANTS Defendants' Motion for Summary Judgment as to the breach of contract claim.[1]

**B. Fraud and Negligent Misrepresentation**

    **1. Particularity of Pleading**

Defendants assert that Plaintiffs did not plead their fraud claims with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). See Coffey v.

---

[1] Count II of the complaint and much of the parties' argument in their briefs supporting their motions for summary judgment are devoted to the availability of a statute of frauds defense in this case. Finding that the parties lacked the intent to create a binding sales contract renders this line of argument moot.

Foamex, L.P., 2 F.3d 157, 161 (6th Cir. 1993). The Sixth Circuit requires that the pleader "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Id. at 161-62.

In Paragraph 14 of the Complaint, Plaintiffs allege that the misrepresentation giving rise to their fraud claim occurred on April 14, 2006, on eBay. (Compl. ¶ 14.) Paragraph 50 of the Complaint alleges that Defendants entertained offers for the home after Plaintiffs had submitted the high bid, despite indicating in their auction description that they would not do so. Paragraph 52 of the Complaint alleges that Defendants committed these acts of fraud intentionally, and Paragraph 53 alleges that Plaintiff suffered injuries as a result of Defendants' alleged fraudulent scheme. By alleging all of the required elements in the Complaint, Plaintiffs have met the particularity requirement.

**2. Factual Support**

Defendants contend that both Plaintiffs' fraud claims and their negligent misrepresentation[2] claims are not

---
[2] To succeed on a claim of fraud, Plaintiffs must show the following elements:

supported by the facts in the record. In support of both claims, Plaintiffs allege that Defendants intentionally misrepresented that the auction created a legally binding contract when they did not intend it to. As discussed in section III.A., infra, Defendants' additional auction terms, at most, created an obligation to negotiate in good faith and did not state that a binding contract would be formed at the close of the auction. (Shutts Dep. 100-01, Ex. 10.) Plaintiffs have failed to create a genuine dispute as to the accuracy of the auction's terms. Without evidence of any misrepresentation of an existing or past fact, there can be not claim for fraud or negligent

---

> (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation's falsity – that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intent to carry out the promise."

Shahrdar v. Global Housing, Inc., 983 S.W.2d 230, 237 (Tenn Ct. App. 1998).
  For a successful negligent misrepresentation claim, the following elements must be present:

> (1) the defendant is acting in the course of its business, profession, or employment, or in a transaction in which it had a pecuniary (as opposed to gratuitous) interest; and (2) the defendant supplies faulty information meant to guide others in their business transactions; and (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies on the information.

Robinson v. Omer, 952 S.W.2d 423, 427 (Tenn. 1997).

misrepresentation. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' fraud and negligent misrepresentation claims.

**IV. Conclusion**

For the reasons state above, this Court GRANTS Defendants' Motion for Summary Judgment, DENIES Plaintiffs' Motion for Partial Summary Judgment, and DISMISSES all of Plaintiffs' claims with prejudice.

So ORDERED this 16th day of June, 2008.

/s/ JON P. McCALLA\_\_\_\_\_
UNITED STATES DISTRICT JUDGE